UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSEPH DEAN BROWN,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

Case No. 3:13-cv-06061-KLS

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On November 11, 2010, plaintiff filed an application for disability insurance benefits, alleging disability as of October 1, 2008. See ECF #9, Administrative Record ("AR") 11. That application was denied upon initial administrative review on March 15, 2011, and on reconsideration on July 5, 2011. See id. A hearing was held before an administrative law judge ("ALJ") on July 29, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 28-70.

In a decision dated August 3, 2012, the ALJ determined plaintiff to be not disabled. See AR 11-23. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 9, 2013, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 404.981. On December 13, 2013, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #1. The administrative record was filed with the Court on February 20, 2014. See ECF #9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, because the ALJ erred in rejecting the opinions of Daniel M. Neims, Psy.D., and Alen Chen, M.D. For the reasons set forth below, however, the Court disagrees the ALJ erred as alleged, and thus in determining plaintiff to be not disabled, and therefore finds defendant's decision to deny benefits should be affirmed.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2dat 1119 n.10.

within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.

2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

With respect to the opinion of Dr. Neims, the ALJ found in relevant part:

> On August [18,] 2010, examining psychologist Dr. Neims opined that the claimant had only mild limitations in his ability to perform simple and complex tasks, as well as moderate limitations in his ability to learn new tasks (*See* [E]xhibit 1F/6). I give this portion of the assessment significant weight because it is consistent with the record and because it is supported by examination findings such [sic] intact serial threes and sevens and intact short-term and long-term memory (Exhibit 1F/11). Dr. Neims also gave the claimant a global assessment of functioning (GAF) score of 50 and opined that he had marked limitations in his ability to perform routine tasks and maintain appropriate behavior in a work setting (Exhibit 1F/6). This portion of the assessment is given little weight because it is not supported by examination findings and is inconsistent with the claimant's reported functioning, which includes working at the Puyallup Fair (Per hearing testimony). Although the claimant reported working at the Fair for two weeks, he did not allege that his inability to continue this work was caused by mental symptoms (Per hearing testimony). As to Dr. Neims's opinion that the claimant has marked limitations in his ability to relate to coworkers and supervisors, as well as interacting with the public, I accord it some weight and have accounted for such limitations in the residual functional capacity found in this decision.

AR 20. The Court agrees the ALJ erred in rejecting the marked limitations in plaintiff's ability to perform routine tasks and maintain appropriate behavior in a work setting on the basis that they are not supported by examination findings, as the ALJ failed to provide any specific discussion regarding Dr. Neims's findings, and as plaintiff notes, a significant portion thereof – including Dr. Neims's personal observations and the results of the mental status examination he conducted – are potentially indicative of significant mental health limitations. See AR 238-40; Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (opinion based on clinical observations supporting diagnosis of depression is competent evidence); Clester v. Apfel, 70 F.Supp.2d 985,

990 (S.D. Iowa 1999) ("The results of a mental status examination provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the diagnosis of a physical illness or injury.").

The Court further finds the ALJ erred in silently – that is, in failing to provide any stated reason for – rejecting the opinion of Dr. Neims that he had marked limitations in his ability to exercise judgment and make decisions and respond appropriately to and tolerate the pressures and expectations of a normal work setting. See AR 20, 235. Nevertheless, the Court finds that error to be harmless, given that as explained below the ALJ provided a valid basis for rejecting the marked limitations in performing routine tasks and maintaining appropriate behavior, and likely would have rejected the other marked limitations the ALJ assessed on the same basis. See Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

Plaintiff argues the ALJ erred in relying on his "reported functioning," and in particular the work he performed for two weeks at the Puyallup Fair. AR 20. Specifically, plaintiff asserts his testimony that he "couldn't finish the fair because it just got too much" (AR 38) is unclear as to whether he quit that job for mental health or some other reason, and therefore the evidence in the record is ambiguous on this issue, thereby triggering the ALJ's duty to further develop the record with respect thereto. The Court disagrees. The ALJ does have the duty "to fully and fairly develop the record" where the evidence therein is ambiguous, or where the ALJ has found the record to be "inadequate to allow for proper evaluation" thereof. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted); see also Mayes v. Massanari, 276 F.3d 453,

459 (9th Cir. 2001).

Although it is true that the ALJ did not seek to have plaintiff further clarify what exactly he meant by "it just got too much," there is no indication he meant he could no longer continue performing that job due to mental health issues. See AR 38. Indeed, plaintiff's testimony came in the context of the ALJ's questioning him solely as to the physical aspects of the work he performed. See id. It therefore was not unreasonable for the ALJ to find no ambiguity here and thus to presume plaintiff stopped that work for reasons other than mental health. Nor, to the extent plaintiff did stop this job due to his bipolar disorder, does the record actually show he had only "short-lived improvements" or that his disorder would "wax and wane," such that the evidence reveals just a limited number of instances where he was able to function. See Buck v. Colvin, 540 Fed.Appx, 772, 773 (9th Cir. 2013); Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1234 (9th Cir. 2011).

Rather, as noted by the ALJ, other "reported functioning" in the record – including plaintiff's additional testimony at the hearing – shows he continued to be able to work at various jobs (albeit mostly short-termed) up until two months prior to the hearing. See AR 19-20, 43-44. That evidence, along with plaintiff's own report of being able to do "whatever needs to be done" around the house in terms of chores, including yard work (AR 249), supports the ALJ in discounting the marked limitations Dr. Neims assessed on the basis of plaintiff's reported ability to function. At the very least, there is nothing in the record, other than plaintiff's own allegations of a disabling mental condition, to demonstrate that he was only able to work for short periods of time due to the waxing and waning nature of his bipolar disorder. Accordingly, the Court finds that overall the ALJ did not err in rejecting Dr. Neims's marked limitations.

In regard to Dr. Chen's opinion, the ALJ found in relevant part:

> Treating physician Dr. Chen opined that the claimant "will need to be on permanent restrictions likely representing that he is able to function only at sedentary to light handling capacity w[ith] also [*sic*] limitations in twisting and bending, etc" (Exhibit 8F/1). After careful consideration, I accord the opinion little weight. First, it is unclear whether Dr. Chen's opinion refers to the definition of "sedentary" and "light" work as set out in the Dictionary of Occupational Titles (DOT) and the Social Security Administration rulings (SSRs) (*See* SSR 83-10). Moreover, even if Dr. Chen's opinion utilized the definitions set out in the DOT and SSRs, it is inconsistent with the overall record, particularly the assessments of [examining physician] Dr. [Lisa] Garrison and [non-examining physician] Dr. [Norman] Staley.

AR 20. The Court agrees with plaintiff that the record fails to indicate that Dr. Chen was not aware of or unclear about the definition of sedentary and light work set out in either the DOT or the Commissioner's own rulings, or that to the extent there is any lack of clarity on this issue, the ALJ should have further developed the record with respect thereto. Again, however, any such error is harmless, given that the ALJ went on to find that even if Dr. Chen did use those definitions correctly, his functional assessment was inconsistent with that of Dr. Garrison, which itself constitutes a valid basis for rejecting Dr. Chen's assessment.

Plaintiff asserts the ALJ merely pointed out a conflict existed between the opinion of Dr. Chen and that of Dr. Garrison, but did not actually resolve it, and therefore she could not reject Dr. Chen's opinion on this basis. This might be so if the Court were to ignore the ALJ's stated reasons for largely adopting Dr. Garrison's assessment. In adopting it, the ALJ stated:

> In terms of physical assessments, consultative examiner Dr. Garrison opined that the claimant did not have limitations in terms of carrying or lifting and could sit, stand, and walk for 6-8 hours without interruption (Exhibit 3F/4). She also opined that the claimant could frequently climb, stoop, kneel, crouch, and crawl (Exhibit 3F/4). Dr. Garrison's assessment is supported by her examination findings, which show that the claimant exhibited no paravertebral muscle tenderness or spasm (Exhibit 3F/4). Dr. Garrison's assessment is also consistent with the overall record, including treating physician Dr. Chen's reports of normal straight leg raise tests (Exhibit 8F/3). I accord Dr. Garrison's medical opinion significant weight, but find that the claimant is more limited, as set out in the residual functional capacity, to account for the claimant's subjective complaints of back pain.

AR 19. Thus, when the ALJ's evaluation of Dr. Garrison's assessment is read together with that of Dr. Chen, it is clear the ALJ provided specific and legitimate reasons for rejecting the latter in favor of the former. See Magallanes, 881 F.2d at 755, (court may draw "specific and legitimate inferences from the ALJ's opinion"). That is, the ALJ properly found Dr. Garrison's assessment to be supported not only by the largely unremarkable objective clinical findings she obtained, but by the fairly normal ones obtained by Dr. Chen as well, and conversely Dr. Chen's assessment was inconsistent therewith as the ALJ also properly found. See AR 250-51, 266-68; Batson, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician if it is inadequately supported by clinical findings or "by the record as a whole").

The Court also rejects plaintiff's contention that the ALJ failed to provide "the level of specificity" required by the Ninth Circuit when rejecting a medical source opinion. See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). It is true that as stated in Embrey, it is insufficient for an ALJ to merely state that "medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings." Id. But as noted above, an ALJ may reject opinion evidence "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. This the ALJ did here, as discussed above, in explaining her reasons for adopting in large part Dr. Garrison's assessment and rejecting that of Dr. Chen on the basis of the clinical findings both medical sources provided.

Nor does the Court find any error on the part of the ALJ in failing to expressly take into account the fact that Dr. Chen, in addition to being a treating physician, was a specialist as well. It is true that the Commissioner "generally give[s] more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is

not a specialist." 20 C.F.R. § 404.1527(c)(5)). But what that means in essence is that, as with the opinion of a treating physician, the ALJ may not reject a specialist's opinion that is contradicted by other opinion source evidence without first providing "specific, legitimate reasons for doing so that are based on substantial evidence in the record." Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted). This the ALJ did as again discussed above.

CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 7th day of August, 2014.

Karen L. Strombom
United States Magistrate Judge